STATE of Missouri, Respondent,

v.

Clyde Raymond HEINRICH, Appellant.

No. KCD26302.

Missouri Court of Appeals,
Kansas City District.

March 5, 1973.

Robert G. Duncan, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., SWOFFORD and WASSERSTROM, JJ., and HALL, Special Judge.

SWOFFORD, Judge.

Appellant, hereinafter called "defendant", appeals from his conviction of the offense of first degree robbery with punishment assessed at eighteen years.

The defendant raises three points upon which he asks this court to reverse the conviction. *First*, he asserts that he was denied a fair and impartial trial as guaranteed by the Constitution, by reason of the inflammatory and prejudicial closing arguments of the assistant prosecuting attorney. *Second*, he asserts that the trial court erred in failing to sustain his motion to suppress identification testimony because of a police court lineup which was unduly suggestive and conducive to misidentification and this deprived him of his constitutional right to due process of law. *Third*, he asserts that the identification testimony should have been suppressed because he was denied his constitutional right to counsel at said line-up.

The resolution of these matters requires a brief summary of the facts. The only witness at the trial was the victim of the robbery, one James Reno, hereinafter referred to as "Reno".

On October 15, 1971, Reno was employed as an attendant at a Hudson Oil Company service station on Chouteau Boulevard in Clay County, Missouri. At about 2:00 o'clock on that morning, two men drove into the station and purchased a dollar's worth of gasoline. The men then drove the car away from the gas pumps and parked it near the driveway entrance and one of them went to the restroom and the other stood near the office entrance. Reno waited on another customer and then in the station office he was confronted by the man who had used the restroom. This man was holding a blue steel revolver pointed at Reno from a distance of about two feet. The man said, "Give me your money, this is a hold-up." The men relieved Reno of $65.00 in currency and coins, forced him to unlock a back room from which they took some cartons of cigarettes, locked Reno in this room, and left.

Reno made an in-court identification of the defendant as the man with the gun. He testified that the men were at the station for about 15 minutes and were engaged in the robbery within the station office for about 10 minutes of that time. He stated that the service station was brightly lighted, that he got a good look at defendant within the station from a distance of two feet for several minutes, and described his apparel, appearance (including the fact that he had a moustache), weight and height. He pointed out the defendant in the courtroom. The following appears as part of the state's direct examination:

"Q. Now is there any question whatsoever in your mind that this man seated here is the man who robbed you on October 15, 1971?

A. No."

Before the commencement of the trial, court-appointed defense counsel had filed a "Motion to Suppress Identification" of any evidence of a view-type line-up identification conducted at the jail in Liberty, Missouri, apparently on November 18, 1971, because of the alleged unconstitutionality of the line-up procedures. The record before us shows, however, that the court took no action upon this motion because "by agreement of state and defendant, the court doth find said motion be taken with the case." The state did not inquire on direct examination nor attempt to elicit from Reno anything with regard to the line-up identification.

The above in-court identification of defendant by Reno went in without objection, and then on *cross-examination* of Reno,

*the defense brought out* for the first time that after the robbery the police exhibited to Reno at least two groups of police photographs and that therefrom Reno identified the defendant and one, Kidd, as the two men who robbed him.

It was also *brought out by the defense on cross-examination* of Reno, for the first time, that thereafter at the Liberty, Missouri jail, he reviewed a "line-up" of men. He was not sure whether there were 5 or 6 men in the line-up. He again identified from this line-up the defendant and Kidd as the men who robbed him. He had been told by the police that there were two men under arrest and they wanted to see if he could identify them. Only one man in the line-up had facial hair, the defendant.

On redirect examination, Reno stated that the police did not make any suggestions or put any pressure on him to make the identification. The state then offered a photograph of the line-up which Reno identified and which was admitted into evidence *without objection*. This photograph is an 8 x 10 glossy print, showing five young men dressed in jail coveralls. Reno identified the defendant as the second man from the left, who is the only one with facial hair.

The defendant was indicted November 12, 1971. While there is no direct evidence as to the date of the line-up, the photograph bears the legend, "Photo taken at 6:45 P.M. on 11–18–71 at Clay County jail. Witnesses #1 Bill Holbeck #2 Dean Hartley." Counsel was not appointed for defendant until December 11, 1971. From the state's own exhibit, we may assume that the line-up was post-indictment, before counsel was appointed, and that the state offered no evidence that defendant was either afforded counsel at the line-up or made an informed waiver of his right to counsel.

After the state had rested its case with the testimony of Reno, the defendant filed a motion for judgment of acquittal, which makes no mention of the motion to sup-

press identification or the attack upon the constitutionality of the line-up. At this stage of the trial, in colloquy with the court, defense counsel stated:

"We are now at the point to where—and incidentally, the reason that I withdrew for all intents and purposes the motion on the line up was for—and I discussed it with Mr. Heinrich—was on the basis that that would be one way to attack the line up in front of the jury to try to cast some doubts on how it was handled, so I felt that procedure-wise, it was the wise, or tactic-wise, it was the wise thing to do. * * *"

No further action was taken by nor requested of the trial court with reference to the motion to suppress and it was never formally ruled upon. The defense offered no evidence.

In his motion for a new trial, the defendant alleges error of the trial court *"in denying"* defendant's motion to suppress identification evidence because it arose out of a line-up procedure which denied defendant due process of law, as guaranteed by the Fifth Amendment of the United States Constitution. We will direct our attention to this claim first.

█ While it is apparent that this matter was neither properly presented nor preserved for review, and we are not requested to review this element of the case as plain error under Rule 27.20(c), V.A.M.R., we are compelled to do so *sua sponte* for the reason that federally guaranteed constitutional rights of the defendant are involved.

██ It is now well settled law that post-indictment or post-information out-of-court identifications from view-type confrontations or line-ups are a "critical" phase of a criminal prosecution and the accused has the constitutional right to counsel at that stage or has the right to make an informed waiver of counsel. If a person who has made such an identification at an illegal and unconstitutional line-up is proffered as a witness as to his line-up

identification, such evidence calls into operation the "per se exclusionary rule". If such a person is proffered as an identification witness, without reference or regard to the out-of-court line-up, and a proper motion to suppress such testimony is made, it becomes the duty of the court to conduct a hearing before trial or outside the presence of the jury, to determine whether or not the in-court identification rests upon independent facts or circumstances, untainted by an illegal line-up. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; State v. Cannon, Mo.Sup. en banc, 465 S.W.2d 584; Scurlock, Basic Principles of the Administration of Criminal Justice with Particular Reference to Missouri Law, 38 UMKC Law Review, 297–8 (1970).

■ In the case before us, however, these constitutional principles regarding identification are of no weight for a number of reasons. The defendant's "Motion to Suppress" was apparently directed only to evidence regarding the line-up identification, and no request was made of the court at any stage of the proceedings to rule such motion or conduct a hearing relating to the independent validity of the in-court identification by Reno. The state did not in any way seek to inject into the trial any evidence concerning the line-up identification until these matters were brought out by the defense in cross-examination of Reno. Such procedures do not "offend" the rule in Wade or Gilbert. State v. Peel, Mo.Sup., 469 S.W.2d 33, 36. Counsel for defense freely admitted in the record that, after consultation with the defendant, this procedure was decided upon as "tactic-wise". Judicial sanction should not (and will not here) be given to such late repudiation (after adverse results) of a deliberate and free decision of defendant and his able counsel as to a trial position. Lastly, from the direct evidence of Reno, it appears that he had ample opportunity to and did observe the person who robbed him, as an independent and untainted basis for his in-court identification of the defendant. This testimony was not objected to at the trial by the defendant, and its believability was for the jury.

For these reasons, we hold that so far as the identification testimony by the state is concerned, none of the defendant's constitutional rights were violated and no plain error is shown.

This brings us to the consideration of whether or not the jury arguments of the assistant prosecuting attorney were so extremely inflammatory and prejudicial as to deprive the defendant of his constitutional right to a fair and impartial trial, and as claimed by the defendant, results in a cruel, unusual and, therefore, unconstitutional, punishment under the Eighth Amendment of the United States Constitution.

■■ The asserted violation of the Eighth Amendment is specifically set forth in defendant's Motion for a New Trial, but there is no substance to this. The sentence was eighteen years for first degree robbery, which under the statute carries a penalty of five years to life. Section 560.-135, V.A.M.S. It has long been the decisional rule in Missouri that where the punishment assessed is within the range set by the statute covering the offense, such punishment cannot be held to be excessive nor constitutionally cruel or unusual. Likewise, our appellate courts have consistently and properly refused to invoke or consider any doctrine of "comparative" sentences or punishments. State v. McCaine, Mo.Sup., 460 S.W.2d 618, 621; State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 23; State v. Brownridge, Mo.Sup., 459 S.W.2d 317, 319.

■ We have scrutinized and analyzed with great care the jury arguments of the assistant prosecuting attorney of Clay County, Missouri, made in this trial. De-

fendant has set forth in his brief ten (10) quotations from these arguments—each of which he denominates as improper and the cumulative effect of which he asserts deprived him of his constitutional right to a fair and impartial trial and due process of law. He objected to only two of these at the trial, and specifically identified only one in his Motion for a New Trial. Again, however, we have reviewed this element of the appeal under the plain error rule, Rule 27.20(c), and we are convinced that the arguments were inflammatory and prejudicial to defendant's rights and require the granting of a new trial.

■ Under our system of criminal jurisprudence, the prosecuting attorney occupies a quasi-judicial position with reference to the prosecution of a criminal offense. He has the right and duty to prosecute with vigor and present all of the admissible evidence and legitimate arguments at his command showing guilt. But no less a duty rests upon him to vouchsafe the defendant a fair and impartial trial—based upon facts, not guesswork; legitimate inference from the facts, not prejudice; cool analysis and decision, not passion. He should always keep uppermost in his mind the axiomatic principle that all persons charged with crime are presumed to be innocent; that a fair and impartial trial is a constitutional guarantee of all defendants guilty or innocent; and that not an unimportant part of his obligation as a prosecutor is to see that these goals are reached in every case.

■ In the area of jury argument, our courts have laid down specific guidelines as to permissible argument by the prosecutor. He can properly argue to the jury the necessity of law enforcement as a detriment to crime; the evil results that will flow to society from any failure of the jury to do its duty; the responsibility of trial juries in the suppression of crime, and the legitimate inferences to be drawn from the evidentiary and record facts of a given

case. He may not, however, seek by inflammatory appeals to arouse in the jurors personal hostility toward or personal fear of the defendant. He may not "personalize" the jury. State v. Tiedt, en banc, 357 Mo. 115, 206 S.W.2d 524; State v. Groves, Mo.Sup., 295 S.W.2d 169, 173–174; State v. Morris, Mo.Sup., 248 S.W.2d 847, 852; State v. Evans, Mo.Sup., 406 S.W.2d 612, 616–617; State v. Vermillion, Mo.Sup., 446 S.W.2d 788; State v. Paxton, Mo.Sup., 453 S.W.2d 923; Missouri Digest, Criminal Law, ■ Neither is it proper argument for a prosecutor to speculate as to the future possible acts or conduct of the defendant. State v. Groves, supra; State v. Tiedt, en banc, 357 Mo. 115, 206 S.W.2d 524, 526–527. As illustrative of the foregoing, it was held to be inflammatory and prejudicial and probably reversible error if properly preserved in State v. Morris, supra, for a prosecutor to argue, "you (jury) cannot under any circumstances give him an opportunity to go out and kill somebody else." In State v. Groves, supra, the prosecutor's argument "Send this man to five years in the Pen. Don't let him out running around the streets 'cause if any of you have any daughters and if this defendant ever got the opportunity your daughter could be the next one  *  *" was held to be reversible error.

In the case before us, the defendant was charged with first degree robbery of witness Reno. He pleaded "not guilty".

At the trial, the only witness was Reno, the victim of the robbery. The only issue was the identification of the defendant as one of the robbers. The defendant did not testify and, therefore, his character, record or credibility was not an issue. Against this evidentiary background, the assistant prosecutor of Clay County, Missouri, in his opening argument to the jury, first characterized the case as "the most important case on the criminal docket" and stated that the penalty as set by the Legislature

was 5 years to life for a good reason. He then stated:

"* * * Robbers should not be permitted to walk amongst folks in society particularly robbers who brandish guns and go into stores and go into filling stations and who threaten the life of innocent people. That's what happened in this case."

There was no finding that the defendant was a "robber", except the uncorroborated testimony of Reno, that he had ever robbed a "store" or that he had threatened anyone's life.

Warming to his task, the prosecutor then recounted Reno's testimony of the hold-up and that "Mr. Heinrich took the gun out from under his coat" and then said to the jury:

"* * * You can *imagine* yourselves what might have happened if the *slightest move* or miscalculation by *poor* Mr. Reno. People ought not to be allowed to brandish guns and rob people. *Someone is going to get hurt, and get hurt bad.*

*This case is one of the most aggravated cases in criminal law."*

Then to drive home this invitation to imagination, the characterization of the victim as "poor Mr. Reno", the forecast of great harm to come (from the defendant), his personal view as to the magnitude of the crime and to "personalize" these things to the jury he said:

"* * * The consequences of this case are quite vital. Should *this man ever be* allowed to walk the streets, will *he ever be able to walk into society without all of us being afraid."*

Encouraged by the court's failure to sustain an objection to this argument, he continued:

"* * * There's just some people who can't function in society. There are some people that can't be permitted to *walk into stores, walk down the street,* can't be permitted to walk into a *hardware* or filling station because they know their only means of making a living, in fact, they've chosen that way of life, is to use force, brute force, and use a gun in order to extract money from people. *This man could hurt someone.* * * * Should this type man be allowed to function in society? I say, no. And that's why at the end of this case when I'm allowed to argue again, I'm going to ask you to convict this man and give him thirty years in the penitentiary so that he never again will be allowed *to walk the streets and to engage in a life of crime."*

Not by the wildest stretch of imagination can this argument be reconciled with a legitimate analysis of the evidence or valid inferences to be drawn therefrom.

After counsel for defendant made his argument, based largely upon the real issue of identification, the prosecutor renewed his attack:

"* * * we don't know whether or not that gun was loaded. The only way we could have found out is for *Mr. Reno to have been laying in his grave. It's a wonder it didn't happen.* I don't want it to happen. *We* don't want *criminals permitted the opportunity to put other innocent folks in their grave.* * * * There's just some people that don't know how to be law abiding. Mr. Heinrich is one of them."

"* * * there is just some folks you can't let out of *the cage.* It's as simple as that, and *this is one of those persons, because he's going to hurt somebody.* * * *"

"* * * I say he'd ought to have thirty years in the penitentiary, not for his protection, he doesn't need it, for society's protection. *He ought never be allowed to walk in a filling station again.*

*He ought never be allowed to walk anywhere in Clay County again."*

After some brief comments for the first time in his arguments, about Reno's testimony as to identification, the prosecutor closed upon this peroration:

" * * * You've got to decide whether this man ought to be allowed to walk the streets, whether Mr. Heinrich should ever be allowed to carry a gun. He's not going to do it in jail, *but wait until he gets out, what will happen the next time?"*

An objection to this closing comment in the prosecutor's argument was overruled.

We do not believe that any further comment is necessary from us. The conclusion is irresistible and inevitable, that this closing argument of the prosecutor went far beyond his duty as a quasi-judicial officer, and violated the permissible guidelines for state's argument in criminal proceedings. The arguments should not have been made in the first place, they should have been objected to by defense, and a proper record made to preserve the error for review or, the trial court, upon objection or acting within his inherent authority to control trial proceedings, could have done so of his own motion and initiative and properly instructed the jury and confined it to legitimate areas of function and decision. State v. Raspberry, Mo.Sup., 452 S.W.2d 169.

The specific and cumulative effect of this argument and the lack of proper objection to or action by the trial court resulted in an inflammatory and prejudicial atmosphere and foreclosed the possibility of a fair and impartial trial. We take cognizance of this as plain error involving substantial constitutional rights under Rule 27.20(c).

The conviction and sentence of the defendant are reversed and the cause remanded for a new trial. It is so ordered.

All concur.