Jean Ann **PAVY**, Movant-Appellant,

v.

**STATE of Missouri**, Respondent.

No. 9519.

Missouri Court of Appeals,
Springfield District.

Dec. 18, 1973.

Edward F. O'Herin, Malden, for movant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Robert Presson, Asst. Attys. Gen., Jefferson City, for respondent.

TITUS, Chief Judge.

Jean Ann Pavy was charged with first degree murder (§ 559.010 RSMo 1969) in connection with the shotgun slaying of her husband. On October 1, 1971, Mrs. Pavy, then 44 years of age, appeared with her lawyer in the Circuit Court of New Madrid County, pleaded guilty to the reduced charge of murder in the second degree (§ 559.020), and was sentenced to life imprisonment. § 559.030. On August 28, 1972, she filed a Rule 27.26, V.A.M.R. motion to correct (actually lessen) the sentence,[1] counsel was appointed, and an evidentiary hearing was conducted March 16, 1973. Movant was the lone witness; the state's only evidence was the transcript of the proceedings at the time the guilty plea was entered. After duly complying with Rule 27.26(i), the trial court denied the motion. Mrs. Pavy pursues this appeal as a poor person contending (according to the points relied on in her brief) that the court nisi erred in denying her motion (1) "because appellant was given too severe a sentence on a second degree murder charge . .," (2) "because appellant was coerced into making a plea of guilty because appellant thought such a plea would give her a better chance for parole, and give her more favorable acceptance back in her home community," and (3) "because appellant was given a harsh, cruel and unusual punishment, that is, a life sentence for second degree murder."

Movant testified that prior to pleading guilty she had "willingly and voluntarily" given a "true" confession of her part in a scheme with one Carl Watson to kill her husband, i. e., Mrs. Pavy "left a shotgun out in a shed behind the house, and . . . went to bed . . . with the young daughter in an adjoining bedroom [to where her husband was sleeping; that] early in the morning, or that night, this Mr. Watson came by and got the shotgun from the shed and went in the front door and shot the man in the bed." Mrs. Pavy's recountings are that she was goaded into the plot because her husband had threatened her with violence and subjected her and their children to abusive treatment.[2] She acknowledged that before pleading guilty she knew the prosecuting attorney would recommend a life sentence, that she was afforded "all of the time that was necessary" to confer with her lawyer and family, and that she entered the plea of guilty knowing "what the sentence was going to be." Apropos of the grounds averred in her Rule 27.26 motion (note 1, supra), movant said: "*I thought* it would be better for me [to plead guilty], or *I thought* the officials would accept me better back in New Madrid County, and so I could go back to my old job. . . . *I thought* it was better to take that [life sentence] than have a jury trial," albeit upon reflection, "I felt I was kind of heavily sentenced for the part I participated in." (Our emphasis). This testimony, contrary to the intimation contained in her motion, attests the guilty plea was not induced by her lawyer's advice but rather was predicated upon what Mrs. Pavy herself thought would beneficially inure to her as a result of such a plea. The true essence of mov-

1. In paragraph 8 of the motion the grounds given therefor were: "(a) Severity of Sentence on 2nd Degree Murder Charge. (b) Counsel advised Guilty Plea because Better chance for parole. More favorable acceptance back in community. (c) Missouri Statutes carries [sic] not less than 10 years for said charge. Natural Life imposed seemed harsh, cruel and unusual punishment."

2. When movant pleaded guilty, her then attorney told the court: "Mrs. Pavy had a marital history of a lot of violence with the deceased; and that he had a history of incarceration or mental hospitalization and on occasions had threatened to kill Mrs. Pavy. This all occurred substantially before the occasion that we are talking about here, but it is not as cold blooded as it sounds from the facts."

ant's complaint is that although it was never represented that the sentence would be anything other than life imprisonment, she was hoping her plea would somehow result in a lighter sentence or prompt the parole board to free her on parole within a short time after she had been incarcerated. While "hope springs eternal in the human breast" (Pope), it is likewise true that "things which you do not hope happen more frequently than things which you do hope" (Plautus), and an unfulfilled hope for a sentence lighter than that received, is not alone sufficient to set aside a guilty plea. Babcock v. State, 485 S.W.2d 85, 90[12] (Mo.1972).

Proof of movant's statement that her plea was "coerced" cannot be bottomed on a naked assertion thereof either in her brief [Hendrix v. State, 495 S.W.2d 457, 460 (Mo.App.1973)] or in her Rule 27.26 motion [Ward v. State, 451 S.W.2d 79, 81[1] (Mo.1970)], and when, as here, there was no evidence the plea was born of coercion, there is nothing for an appellate court to decide as it may not convict a trial court of error upon an issue which utterly failed for lack of evidentiary support. Edwards v. Hrebec, 414 S.W.2d 361, 366[9] (Mo.App.1967). Mrs. Pavy's argument on this point is not that she was coerced into the plea by any outside forces, but that the coercion occurred through self-conjured hope and egregious female reasoning that her open court confession would extract compassion from the parole board and forgiveness from her neighbors and associates. But again, a disappointed hope for an early parole or a lesser sentence does not amount to coercion nor render a plea of guilty involuntary when the hope is not based on real and positive representations upon which the movant is entitled to rely. Mick v. State, 487 S.W.2d 452, 454[1] (Mo.1972).

██ Fixing the limits of punishment is a legislative function [McCulley v. State, 486 S.W.2d 419, 423[5] (Mo.1972); State v. Golightly, 495 S.W.2d 746, 753[4]

(Mo.App.1973)], and as movant did not receive punishment greater than the highest limit declared by law (§ 559.030), it cannot be held to be excessive [State v. Smith, 445 S.W.2d 326, 332[6] (Mo.1969) or cruel or unusual. State v. Heinrich, 492 S.W.2d 109, 113[6] (Mo.App.1973).

The judgment is affirmed.

STONE, and BILLINGS, JJ., and FLAKE L. McHANEY, Special Judge, concur.

HOGAN, J., not sitting.