**STATE of Missouri, Respondent,**

v.

**Frederick THOMAS, Jr., Appellant.**

**No. KCD 27680.**

Missouri Court of Appeals,
Kansas City District.

Dec. 8, 1975.

Motion for Rehearing and/or Transfer
Denied Jan. 12, 1976.

Thomas M. Larson, Public Defender, Philip H. Schwarz, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

WELBORN, Special Judge.

Appeal from judgment of conviction and sentence to 50 years' imprisonment, entered on jury verdict finding Frederick Thomas, Jr., guilty of forcible rape.

At around 5:00 P.M., January 26, 1974, as Valerie H., a cocktail waitress at the

Alameda Plaza Hotel in Kansas City, was leaving her place of employment, she was accosted in the parking garage by a man who asked her to assist him with some difficulty he was having with his automobile. At his direction, she sat down on the front seat of his auto. He shoved her over into the car, pointed a knife at her and asked where her money was. She replied that she had left her money in her car. He threatened to "slit" her throat. She started to scream. He struck her in the face and head, scuffled with her until she was on the floor of the car and then drove away with Valerie lying on the floor of the vehicle.

They drove for approximately an hour, when the auto stopped and Valerie was permitted to get into the front seat. There followed a conversation between the two of around an hour's duration. Eventually, the assailant got into the back seat of the car and asked Valerie to join him there. When she refused, he pulled her into the back seat, partially disrobed her and had sexual intercourse with her against her will.

Valerie was then allowed to get out of the car and the man drove away. She then walked to a road where she obtained a ride and was taken to the sheriff's office at Harrisonville. The officer who took her to the hospital described her hair as "messed up," with blood in it. She had a black eye and several cuts on her face. She had blood on the front of her coat.

Detective Steen of the Kansas City Police Department had received a call from persons at the Alameda Plaza who had witnessed the occurrence in the parking garage and he had issued a "broadcast pickup" for Valerie. When he learned that she was in Harrisonville, he went there and saw her at the hospital. After her wounds had been treated, she accompanied Steen and other officers in an auto to the site of the attack. At the scene, the officers found cigarette butts, paper towels and a piece of paper bearing seven numbers.

Law enforcement officials concluded that appellant Frederick Thomas, Jr., was the assailant and on January 28, Detective Steen was advised that a Cass County warrant had been issued for Thomas's arrest on the charge. The police had ascertained that Thomas owned a 1970 Chevrolet Impala sedan. (The victim described the vehicle in which the attack occurred as a "late model Chevy.") Police checked at Thomas's residence, 3218 Linwood in Kansas City, but his car was not there. Later, at around 4:00 P.M., his auto was seen parked in front of the residence. Steen went to the door of Thomas's apartment and noticed a light shining and heard the television operating. He received no response to a knock at the door.

A pass key was obtained from the apartment manager. Steen entered the apartment. Inside he found no one. He did see a small steak knife lying on a dividing counter between the kitchenette and dining area. He also saw a can of cleaning wax on the bureau in the bedroom. Steen took these items. He also saw a laundry bag. He examined its contents and removed a pair of trousers from it.

Steen then went to the street where Thomas's car was parked. He looked inside the car. "On the right window crank on the right front door, there was a clump of reddish-blond hair that was very visible. The sun was shining in. It was glistening. From the headliner in, looking out from the car, there was a small spot of what appeared to be blood. Another spot of what appeared to be blood was on the seat." The car was towed to police headquarters where it was "processed" by a police evidence technician, beginning at around 5:30 P.M., January 28. The technician discovered strands of hair in various parts of the auto. He removed parts of the carpet which had red spots, apparently blood.

At around 7:00 P.M., January 28, Kansas City police officers took up surveillance of Thomas's apartment. At around 7:30, they saw Thomas come out of the apartment building and placed him under arrest.

At his trial on a charge of rape, Valerie identified appellant as her assailant.

On this appeal, the first assignment of error is based upon the trial court's overrul-

ing of appellant's motion to suppress evidence obtained by police in the processing of his automobile and in permitting the introduction of such evidence at his trial. Appellant's pre-trial motion to suppress, which also was directed at the articles obtained from the apartment was sustained as to the clothing taken from the laundry bag but overruled as to the knife and can of wax and the articles found in the automobile. On this appeal, there is no claim of error regarding the overruling of the motion and introduction into evidence of the knife and wax.

At the trial a chemist employed at the Regional Criminalistics Laboratory testified that he examined the pieces of carpet with red stains and found that the stains were human blood, of the same type as that of the victim. He also testified that the hair taken from the auto "fell within the limits of variance for a match" of the victim's hair.

On this appeal, appellant contends that the evidence was obtained by the police as the result of an unlawful search, in violation of appellant's rights under the Fourth Amendment to the Constitution of the United States.

The point of departure with regard to this contention is the fact that officers who searched and seized appellant's automobile did so without a warrant authorizing such action. Appellant suggests that the question should be determined on the basis that the officers had ample opportunity to obtain a warrant but failed to do so. This proposition brings to light the previously noted void in Missouri law which failed to authorize the issuance of a search warrant in these circumstances. See *In Re J.R.M.*, 487 S.W.2d 502, 504 (Mo. banc 1972); *State v. Wright*, 336 Mo. 135, 77 S.W.2d 459, 462[6, 7] (1934). Whether or not the new search warrant statute (Laws of Missouri, 1973–1974, p. 922), which became effective August 13, 1974, will alter the situation need not be here considered.

■ The absence of a search warrant, even where available and when time would have permitted one to be obtained is not determinative of the validity of an automobile search. However, the state has the burden of showing that the search falls within a situation where the absence of a warrant will be excused.

In this case the state relies upon "probable cause" for the search (*Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)) coupled with "exigent circumstances" as recognized in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 449 (1970).

Basically, the probable cause is claimed to have arisen from the fact that Detective Steen knew that a Cass County warrant had issued for appellant's arrest for rape and the fact that the officer's plain view examination of the automobile led to the belief that the vehicle contained evidence of the crime. These circumstances were adequate to provide probable cause for the subsequent seizure and search. *State v. Brown*, 476 S.W.2d 519 (Mo.1972).

■ Appellant contends that the discovery of the hair and blood stains was not inadvertent, as required for a "plain view" justification for seizure of evidentiary items. See *Coolidge v. New Hampshire*, 403 U.S. 443, 469, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). However, the circumstances warranted the police action in looking at the interior of the automobile. The vehicle was parked on a public street and the police officer therefore had the right to be where he was when he looked into the interior of the vehicle. See *Smith v. Slayton*, 484 F.2d 1188 (4th Cir. 1973). The officer was not required to avert his eyes and ignore the matters which came to his attention and which had an apparent connection with the offense with which the owner of the vehicle was charged.

■ The existence of probable cause in these circumstances distinguishes this case from *In Re J.R.M.*, 487 S.W.2d 502 (Mo. banc 1972). That case involved the removal of a vehicle from a public parking area and its subsequent examination at police headquarters, which produced evidence connecting the operator of the auto with a homi-

cide. In that case, the vehicle was seized, not on probable cause arising from a prior view of the interior of the vehicle, but wholly on the basis of suspicion, arising from the knowledge that the homicide victim had been in the auto the day before her body was discovered. Contrary to the situation here, the preliminary discovery of evidentiary items was made after the vehicle had been removed to the police station, not when the vehicle was parked in the public place. 487 S.W.2d 504. The court in *In Re J.R.M.* declined to give significance to the fact that the vehicle was seized while in a public parking area. 487 S.W.2d 512. However, that determination was not related to the question of the existence of probable cause at the time of the seizure and does not preclude a finding of probable cause in these circumstances.

On the matter of exigent circumstance, the officer who entered the apartment found evidence of the recent presence of persons in the apartment. The police officer made his presence known to the apartment manager. The police could not be certain that appellant would not become aware of their seeking him and would not attempt to escape in the vehicle which was immediately available to him. These circumstances created an exigency which justified the police action in taking into custody the vehicle with its contents of evidentiary importance. *State v. Brown, supra.*

The circumstances in this regard differ from those presented in *In Re J.R.M., supra.* There, the court pointed out that, although the operator of the vehicle involved was aware of police suspicion directed toward him, he had taken no action to dispose of the car or destroy evidence it might contain. Here, there was no evidence that appellant was aware of the police activity directed at him prior to Detective Steen's arrival at his apartment. Certainly the police were not required to await some action on the part of appellant to attempt to flee or destroy evidence before the police took steps to insure otherwise.

The trial court did not err in overruling appellant's motion to suppress the evidence found in the automobile and there was no error in permitting its use at appellant's trial.

When the police returned with Valerie to the scene of the offense, officers discovered various items, including a slip of paper bearing seven numbers, "921–8490." This paper was introduced into evidence. Detective Steen testified that he made out a Field Interview Form upon which he recorded information concerning the name, address, telephone number, etc., given by appellant in response to the officer's questions. When the officer was asked concerning the replies received and specifically concerning the telephone number, defense counsel objected on the grounds that the report itself would be the best evidence. The objection was overruled and the officer testified that appellant told him his telephone number was 921–8490.

■ On this appeal, the appellant contends that the admission of Steen's testimony was error because it was hearsay, because it violated the best evidence rule and because the state failed to notify appellant, in response to his request for discovery, that appellant had made such statement to the police. Inasmuch as the only objection voiced at the trial was based upon the best evidence rule, that will be the ground of error considered here. *State v. Sanders,* 473 S.W.2d 700, 703[1] (Mo.1971); *State v. Sheppard,* 515 S.W.2d 785, 786–787[1] (Mo. App.1974).

■ The best evidence rule was not applicable to Steen's testimony. He was testifying not to establish the contents of a written instrument, but to appellant's reply to the question asked him. The fact that the information contained in the reply was reduced to writing does not cause such writing to become the best evidence of the fact stated, within the rule invoked by appellant. *State v. Tyson,* 363 Mo. 1242, 258 S.W.2d 651, 654[5] (1953); *State v. Curry,* 473 S.W.2d 747 (Mo.1971).

■ Appellant's next claim of error is based upon the trial court's refusal to order a mistrial because of allegedly prejudicial

unfair closing argument on the part of the prosecutor. The objection is based upon the following:

"MR. WHITCRAFT (Prosecuting Attorney): He said when you went home this evening you would have such a wonderful feeling if you rendered a verdict of not guilty. If you go home this evening, after rendering a verdict of not guilty, I hope you lock your houses up, lock your wives up, and lock your daughters up, if you turn this man out on the street. At twenty-three years of age, he's just starting this crime. We don't know how many rapes has been prevented because Valerie cried rape, and he's been in custody since that time. Keep—

"MR. SCHWARZ: I object to that!

"MR. WHITCRAFT: Keep him in custody.

"MR. SCHWARZ: Object to that and—

"THE COURT: Objection will be sustained.

"MR. SCHWARZ: —ask the Jury—

"THE COURT: The Jury will be instructed to disregard—

"MR. SCHWARZ: May we approach the Bench?

"(Following had at the Bench out of the hearing of the Jury.)

"MR. SCHWARZ: Let me ask for a mistrial for Counsel's arguments that the Defendant is—has been in custody ever since this offense was committed, and that we don't know how many other offenses have been prevented by that fact. We feel that is prejudicial to the extent that it cannot be cured by action in Court.

"THE COURT: Anything further?

"MR. SCHWARZ: No.

"THE COURT: The Court will overrule the motion for mistrial. I would convey a request to the Jury, if you would like me to.

"MR. SCHWARZ: I will—I ask you to do that, Judge.

"THE COURT: What would you like me to say?

"MR. SCHWARZ: Would you state to the Jury that, uh, there is no evidence in this case that Mr. Thomas has been in custody since this rape, and that, uh, uh, any statement by the Prosecuting Attorney that he—other offenses of like character have been prevented by his confinement is, uh, unfair to the Defendant and prejudicial, and they should disregard it.

"THE COURT: All right.

"(Following had in the hearing of the Jury.)

"THE COURT: Ladies and Gentlemen of the Jury, in regard to the last statement of the Prosecutor that the Defendant has been in confinement since the date of this alleged offense, there is no evidence to that effect. And the Prosecutor's statement that no one knows how many rapes or other acts of similar character have been prevented, uh, is not in proper reference, and you should withdraw that from your consideration."

Appellant asserts that the prosecutor's "tirade in the case at bar was at least as intemperate as that given in the case of *State v. Heinrich*, 492 S.W.2d 109 (Mo.App. 1973), and the Court's action in failing to grant a mistrial was an abuse of its discretion."

As this court has stated:

" * * * In *Heinrich*, the prosecutor persistently overstepped the bounds of legitimate argument by personalizing the jury, arousing hostility toward defendant, and implanting fear in the jury that defendant's acquittal was a threat to them personally. We concluded that this unrelieved prejudice had found its way into the verdict which, for that reason, could not stand." *Cloud v. State of Missouri*, 507 S.W.2d 667, 669[5] (Mo.App.1974). The prejudice in *Heinrich* arose not solely because of the persistently improper argument but was attributable also to the absence of any effort to restrain the prosecutor and keep his argument within proper limits. Here the argument was objected to, the objection was sustained and the trial court granted the relief requested by the appellant, except for a mistrial.

As appellant's brief acknowledges, the question of whether the trial court should have granted a mistrial is for that court's discretion. *State v. Perryman*, 520 S.W.2d 126, 131[11–14] (Mo.App.1975). The prosecutor's remarks here were not continued and repetitious as was the case in *State v. Heinrich, supra*. In view of the trial court's prompt action in sustaining appellant's objection and instructing the jury to disregard the argument, the failure to take the drastic step of granting a mistrial was not an abuse of discretion and was not, therefore, error. *State v. Raspberry*, 452 S.W.2d 169, 172–173[2–6], [7–11] (Mo.1970).

■ In a pro se brief, appellant contends that his conviction in this case violates the double jeopardy provision of the Constitution of the United States (Amendments Five and Fourteen) because he had previously been convicted of kidnapping in Jackson County, arising out of the events that occurred then and culminated in the Cass County offense. This contention was not presented in the trial court. There is nothing in the record to show the Jackson County Circuit Court proceedings. In these circumstances, there is nothing properly before the court for consideration on this issue. The allegation of the pro se brief cannot substitute for what must be contained in the transcript on appeal in order to present a question for appellate review. *State v. Neal*, 476 S.W.2d 547, 549[2, 3] (Mo. banc 1972).

Judgment affirmed.

All concur.