STATE of Missouri, Respondent,

v.

Robert A. WALLS, Appellant.

No. 69011.

Supreme Court of Missouri,
En Banc.

Feb. 17, 1988.
Rehearing Denied March 15, 1988.

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Deborah L. Grounds, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Robert A. Walls, was convicted of murder in the first degree,[1] § 565.020.1, RSMo Supp.1984; robbery in the first degree, § 569.020, RSMo 1978; and burglary in the first degree § 569.160, RSMo 1978. On November 8, 1986, after finding aggravating circumstances, as required by § 565.032, RSMo Supp.1984, the jury imposed a sentence of death for murder in the first degree. Appellant also was sentenced to consecutive terms of life imprisonment and 30 years imprisonment for robbery in the first degree and burglary in the first degree, respectively. Appellant appeals from the murder conviction and sentence.

This Court has exclusive appellate jurisdiction in all cases in which the death penalty is imposed. Mo. Const. art. V § 3. We affirm both the judgment and the sentence.

I

Appellant was charged by indictment for the murder of Fred C. Harmon, 88, of Maplewood, Missouri. Mr. Harmon's severely beaten body was found inside a freezer in his home. Terry Wilson and Tommy Thomas also were charged with the murder.

Appellant does not challenge the sufficiency of the evidence. We present the facts as the jury could have found them.

On the night of December 15, 1985, appellant, Terry Wilson and Tommy Thomas were all out drinking. At that time all three were confined to and residents of a halfway house. They decided they wanted to leave St. Louis. Wilson told them he knew an old man from whom he could get a car and some money. Wilson had recently burglarized the victim's house.

All three took a cab to Maplewood, Missouri. They proceeded to the victim's house at 3109 Walter. Wilson and Thomas entered through a window while appellant remained outside. Appellant later entered the house through a side door that was open. Appellant saw blood everywhere and the victim crying on the bedroom floor. The victim, who recognized Wilson, calling him Terry, offered Wilson anything to leave him alone. Appellant saw Thomas kicking the victim's head with the toe of his boot telling him to shut up. All three tried to tie the victim with neckties. The victim strongly resisted. Wilson handed Thomas a roll of duct tape which Thomas used to strike the victim. Appellant held the victim's head down while he was being tied by putting his foot on the right side of the victim's face. Appellant suggested tying the victim's feet and then held his feet while Thomas tied them. Several minutes later, the victim unsuccessfully attempted to get up. All three dragged him into the kitchen. Either Wilson or Thomas suggested putting the victim in the freezer as he had seen in a movie. Wilson also suggested turning on the gas to blow up the house. Wilson then began to put the victim in the freezer by himself and told the others to help him. All three lifted the victim and put him inside, head down. Appellant said he thought the victim was going to "croak." When appellant later opened the freezer, the victim said "I'm already dead, let me die, ... let me die." Appellant went back in the bedroom for the keys to the car and when he returned the television and typewriter had been placed

---

1. **565.020. First degree murder, penalty.—**
1. A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter.

on top of the freezer. Appellant took the typewriter off and called out "are you in there". Appellant then put the typewriter back on the freezer and Wilson and Thomas placed a chair on top of the freezer. Appellant heard the victim moaning and groaning in the freezer. Wilson indicated that he had the victim's car keys and cash and suggested that they should leave. The three drank sodas, then left in the victim's car.

On December 18, 1985, the Maplewood police discovered an open bedroom storm window and a block of wood beneath the window. Inside the house they discovered several areas of blood on the kitchen floor. Four stove burners were on, with the pilot lights extinguished. The telephone cord was ripped from the wall and both the back and front doors were locked. There was blood on the bed, the bedroom wall, and the bedroom floor. The victim's wallet, absent any money, was found in the bathroom. Duct tape with hair on it was found in the kitchen sink. The police noticed a freezer that had an arm chair, television, and a large typewriter stacked on top. Food items were found behind the freezer. The victim's body, covered by a sheet, was found inside the freezer.

The autopsy revealed that the victim had sustained numerous blunt trauma injuries to his head and limbs, an injury which separated his scalp from the skull in the middle of the head, broken ribs on his left side, and a bruise on his spleen. The pathologist testified that the facial injuries could have been inflicted by kicking with boots or tennis shoes. Death was attributed to a combination of blunt injuries, hypothermia, and suffocation. The victim could have died within an hour either from suffocation or hypothermia.

Appellant was arrested on December 20, 1985 in Santa Monica, California for burglary. Also arrested was Terry Wilson. Both provided aliases to the police. The victim's car was recovered about one block from where appellant and Wilson were arrested. Appellant made a statement concerning this murder to the Santa Monica police. This statement and subsequent statements made to Missouri officers were admitted at trial.

The jury found appellant guilty of murder in the first degree, robbery in the first degree and burglary in the first degree. As aggravating circumstances, the jury found that (1) appellant committed the offense of murder in the first degree for the purpose of receiving money or any other thing of monetary value from the victim; [2] (2) the murder in the first degree was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind; [3] (3) the murder in the first degree was committed by a person in, or who has escaped from the lawful custody of a place of lawful confinement; [4] (4) the murder in the first degree was committed while appellant, acting with others, was engaged in the perpetration of the burglary in the first degree and/or robbery in the first degree of Fred C. Harmon; [5] and (5) appellant had been convicted three times for burglary in the second degree.[6] The jury assessed the death penalty.

## II

Appellant alleges that the trial court erred by not striking for cause a venireman, of similar age to the victim, who recalled reading about the victim's death in the newspaper. Appellant asserts that Venireman John Meader did not unequivocally state that he could set aside previous feelings and that he also formed an opinion about an aggravating circumstance. Appellant asserts his sixth and fourteenth amendment rights to a fair trial and due process.

---

2. § 565.032.2(4), RSMo Supp.1984.

3. § 565.032.2(7), RSMo Supp.1984.

4. § 565.032.2(9), RSMo Supp.1984.

5. § 565.032.2(11), RSMo Supp.1984.

6. § 565.032.1(3), RSMo Supp.1984.

Venireman John Meader admitted to reading newspaper accounts of the victim's murder and that he usually believes what he reads in the newspaper. Venireman Meader, responding to the prosecutor's questions, then affirmatively stated that he could listen to the evidence with an open mind and would be guided by only that evidence presented at trial.

On cross-examination, Venireman Meader admitted he thought the victim's murder was a bad deed, but denied that he had formulated an opinion regarding appellant's guilt or innocence. Venireman Meader stated he hoped he could put aside his previous feelings about the murder, and then later responded unequivocally that he could set aside his previous opinion. The trial court overruled appellant's request to strike Meader for cause but stated that he might reconsider the issue. Appellant exercised a preemptory challenge to remove Meader from the panel.

Criminal defendants are entitled to a full panel of qualified jurors. *State v. Engleman*, 634 S.W.2d 466, 471 (Mo.1982) (citations omitted). The trial court must exercise its discretion to strike jurors for cause when appropriate. *State v. Land*, 478 S.W.2d 290, 292 (Mo.1972). The trial court's decision will not be reversed except for abuse of discretion. *Id.* Upon appeal, the facts of the case are reviewed, recognizing that the trial court observed the venireman's demeanor and is in a better position to evaluate the challenge for cause. *Engleman*, 634 S.W.2d at 472. Any doubts should be resolved in the favor of the trial court. *Id.*

■ Prospective jurors are not automatically excluded for cause because they may have formed an opinion regarding a case based on newspaper reports. § 546.150 RSMo 1986. A juror can be sworn if he can set aside any opinion and decide the facts based on the evidence.[7] *Cf. State v. Molasky*, 655 S.W.2d 663 (Mo. App.1983), *cert. denied*, 464 U.S. 1049, 104

S.Ct. 727, 79 L.Ed.2d 187 (1984) (trial court properly denied appellant's change of venue and motion to strike the jury panel and jury because the remaining jurors remembered little or nothing of news reports or had no knowledge of case).

■ Venireman Meader cannot be struck automatically for cause because he read about Mr. Harmon's murder in the newspaper. He stated that he would keep an open mind when deciding the case. It is argued that a problem arises when in response to further questioning by appellant's counsel, Meader stated that he thought the murder was a "very bad deed" and that he hoped he could set aside his feelings and decide the case on the facts. We realize that the trial court's failure to further question a juror regarding any possible prejudice may undercut the trial court's discretion, *State v. Ealy*, 624 S.W.2d 490, 493 (Mo.App. 1981), but here, in response to additional questions posed by Mr. Kessler, Mr. Meader indicated he did not have an opinion as to appellant's guilt or innocence. Meader stated he could set aside any feelings and decide the case on the evidence.

While we do not allow a prospective juror to decide if he can be impartial, *Land*, 478 S.W.2d at 292, on the whole, venireman Meader unequivocally stated he could set aside any feelings he had and decide the case on the facts. Evaluating the entire voir dire, and considering the trial court's opportunity to observe venireman Meader's demeanor, we cannot say the trial court abused its discretion in refusing to strike venireman Meader for cause.

### III

■ Appellant alleges the trial court erred in striking a venireman for cause because the venireman did not unequivocally state that his beliefs would impair his ability to follow the law in the sentencing phase. Appellant claims this error violates his rights under the sixth and eighth amendments under the U.S. Constitution.

7. *Accord, Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975).

Appellant did not renew his objection to the exclusion of venireman Houser in his motion for new trial. We examine this alleged error for manifest injustice or miscarriage of justice under plain error.

Venireman Houser repeatedly equivocated whether he could impose the death penalty. At one point, he responded that he could not consider the death penalty. In response to appellant's questioning, Houser stated he was uncertain he could consider Missouri law. The trial court struck venireman Houser because he could not discern Houser's views from the equivocal responses.

The trial court has discretion to decide whether to strike a juror for cause. In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985) the Court stated "the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. That standard is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *See also State v. Gilmore*, 697 S.W.2d 172, 175 (Mo. banc 1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). The Court justified this standard stating that:

> What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... This is why deference must be paid to the trial judge who sees and hears the juror.

*Wainwright*, 105 S.Ct. at 852, 853. (footnote omitted).

The trial court had the opportunity to observe Venireman Houser and based on his responses, decided that his indecision would substantially impair his performance as a juror. We find no manifest injustice or miscarriage of justice resulted from the striking of this juror.

## IV

Appellant alleges the trial court erred in admitting a statement he gave on December 23, 1985 to Detective Shane Talbot of the Santa Monica, California police. Appellant claims that the totality of circumstances prove that he did not give a knowing and intelligent waiver of his rights because (1) he was not told that Missouri sought him, (2) that Mr. Harmon had died, (3) that he could stop talking at any time, (4) that the conversation was being taped; (5) that appellant agreed to discuss only the California burglaries; (6) he was incarcerated three days prior to questioning; and (7) Detective Talbot failed to honor appellant's indication that he wanted to stop talking. Appellant claims this error violates his fifth amendment privilege of silence and his due process right to a knowing and intelligent waiver under the U.S. Constitution.

Most of the errors alleged by appellant do not relate to whether he made a knowing and intelligent waiver. All were factually found against him by the trial court in a hearing on a motion to suppress. In reviewing this motion, we limit our inquiry to whether the trial court's decision is supported by substantial evidence. *State v. Blair*, 638 S.W.2d 739, 748 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). "Determining whether a waiver constitutes a 'knowing and intelligent relinquishment or abandonment of a known right or privilege, [is] a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *State v. Beck*, 687 S.W.2d 155,

159 (Mo. banc 1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986), (citing *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981)) (citations omitted). "The state must show that 'defendant was effectively advised of his rights and he then intelligently and understandingly declined to exercise them.'" *State v. Hughes,* 596 S.W.2d 723, 726 (Mo. banc 1980), (quoting *State v. Alewine,* 474 S.W.2d 848, 851 (Mo.1971)).

■■ Appellant admits that his statement to Detective Talbot was voluntary. He only asserts that the waiver was not knowingly and intelligently given. The testimony at the suppression hearing showed that appellant and Terry Wilson were arrested in Santa Monica, California on a charge of burglary. Appellant and Wilson used aliases when arrested, appellant taking the name, John Willis. Edwin Kaiser, investigator for the Santa Monica Police Department interviewed appellant about the California burglary. He explained that appellant was arrested on a Friday and was not questioned until the following Monday because he, Kaiser, did not work on weekends. Kaiser also stated no one else spoke to appellant prior to Monday. After Kaiser read the *Miranda* rights, appellant admitted involvement in the California burglary.

Detective Talbot testified that he spoke with appellant that same Monday evening, December 23, 1985. He stated that his purpose in talking to the defendant was to discuss the California burglaries, appellant's identity, and the crime that took place in Missouri. Talbot had information that Wilson might have been involved in the victim's murder and that appellant might have been with Wilson. Talbot told appellant Thomas also had been taken into custody.

Talbot activated a hidden tape recorder prior to questioning appellant. Talbot read appellant his *Miranda* rights which appellant indicated that he understood. Talbot did not tell appellant the conversation was being taped, that he could stop talking at any time, nor did appellant indicate that he

wanted to stop talking. Appellant did not request an attorney and was not offered any promises in exchange for a statement. Talbot testified that appellant did not indicate he wanted to stop talking at anytime. Appellant admitted his complicity in the Missouri murder.

There is substantial evidence to support the trial court's determination that appellant knowingly and intelligently declined to exercise his rights.

## V

Appellant asserts the trial court erred in overruling his objection to the prosecutor's remarks during the rebuttal portion of the state's closing argument in the guilt phase.

### A.

Appellant objects to the following statement made by the prosecutor in rebuttal to appellant's closing argument during the guilt phase:

MR. CHANCELLOR: The rules of evidence prohibit me from saying what the other two said, so I'm at a disadvantage here. What he said implies that this is the only person who made a statement. I cannot say what the others said—

MR. KESSLER: Well, Your Honor, I object to this. Then why is he explaining this?

MR. CHANCELLOR: Retaliatory.

THE COURT: Overruled.

Appellant claims that the prosecutor's statements implied that Wilson or Thomas made statements that would indicate appellant's guilt and the statements are improper retaliation to appellant's closing argument in which he said that at least he confessed. Appellant claims his fourteenth, sixth and eighth amendment rights under the U.S. Constitution were violated.

■■ "The trial court is afforded wide discretion in determining the permissible scope of counsel's argument to the jury and unless an abuse of discretion is demon-

strated, to the prejudice of the accused, the case will not be reversed on appeal." *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc 1980), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980). *See also United States v. Young,* 470 U.S. 1, 6–14, 105 S.Ct. 1038, 1042–45, 84 L.Ed.2d 1 (1985). The prosecutor can retaliate to an argument issue by the defense even if the prosecutor's comment would be improper. *Wood, supra.* The trial court was in a better position to evaluate the tone of the argument. The trial court did not abuse its discretion in overruling appellant's objection.

### B.

The appellant next objects to the following statements made by the prosecutor: *"If there's not a second stage, then heaven help us all."* (Emphasis added.) Appellant claims the prosecutor's statement instilled fear among the jurors and encouraged the jury to speculate about future crimes appellant may commit and was an improper response to appellant's statement in closing argument that cautioned the jury not to find appellant guilty simply because the state requested the death penalty.

The trial court has wide discretion in determining the scope of argument. *Wood, supra.* The prosecutor may argue the evil that can result to society if a defendant is found not guilty. *State v. Heinrich,* 492 S.W.2d 109, 114 (Mo.App. 1973); *State v. McKinney,* 475 S.W.2d 51, 55 (Mo.1971). The prosecutor's comment did not suggest any personal fear like that found in *State v. Raspberry,* 452 S.W.2d 169, 172 (Mo.1970) (put a stop to this crime for the sake of your families, and keep defendant from doing it again); or *Heinrich, supra,* (suggestion that the defendant will engage in a life of crime on the streets).

The trial court did not abuse its discretion in overruling appellant's objection to the prosecutor's argument.

### VI

Appellant alleges error in the trial court's failure to sustain objections made to the state's argument during the sentencing phase such as the prosecutor's personalization of the argument to the jury by asking them to recall other cases they heard about; the prosecutor's comment that appellant had several attorneys representing him; and that twenty-six states had the death penalty. Our standard of review for these alleged errors is for abuse of discretion. *State v. Wood, supra.* We have reviewed the argument and find that the trial judge did not abuse his discretion in overruling appellant's objections.

Appellant seeks to complain about numerous other aspects of the prosecutor's argument, none of which alleged errors are properly preserved for our review. This being a death case, we have reviewed the entire argument and we find that no manifest injustice or miscarriage of injustice resulted from arguments made by the prosecutor.

### VII

Appellant contends Instruction No. 24, patterned after MAI–CR2d 13.48, violated the eighth amendment of the U.S. Constitution by advising jurors that the trial court will fix punishment if the jurors are unable to reach a decision, therefore diminishing the jury's sense of responsibility for determining appellant's sentence. We have previously upheld a death sentence imposed by the trial court after the jury failed to agree on punishment. *State v. Sandles,* 740 S.W.2d 169 (Mo. banc 1987).

### VIII

Appellant next raises four constitutional challenges to the submission of the statutory aggravating circumstances. Appellant's claims are raised for the first time in this appeal, therefore, they are entitled to review only for plain error.

Appellant alleges that the trial court erred in submitting the statutory aggravating circumstance of committing the murder for the purpose of receiving money

or other thing of monetary value § 565.032.2(4), RSMo Supp.1984, and the statutory aggravating circumstance of murder in the first degree committed during the perpetration of robbery and/or burglary, § 565.032.2(11), RSMo Supp.1984. Appellant claims that it is unconstitutional deprivation of due process to submit both circumstances, because the jury could count the single aggravating element of monetary gain twice, which amounts to an automatic accumulation of circumstances. A similar argument was rejected in *State v. Zeitvogel*, 707 S.W.2d 365, 368 (Mo. banc 1986), *cert. denied*, ⸺ U.S. ⸺, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986). An accumulation of circumstances cannot be prejudicial when we have previously held that the finding of one statutory aggravating circumstance is necessary to sustain the death penalty. *State v. Johns*, 679 S.W.2d 253, 267 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985); *State v. Shaw*, 636 S.W.2d 667, 675 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). The trial court did not err in submitting each of the circumstances authorized by the statute.

 Appellant next claims that the statutory aggravating circumstance of committing the murder for the purpose of receiving money or monetary value § 565.032.2(4), RSMo Supp.1984 and the statutory aggravating circumstance of murder committed during the course of a robbery and/or burglary, § 565.032.2(11), RSMo Supp.1984 fail to channel the jury's discretion by narrowing the class of those individuals eligible for the death penalty in a case in which the accused is convicted of both robbery and burglary in the same trial. Appellant argues that the facts supporting these circumstances repeat evidence presented at trial and therefore do not separate this murder from other murders that do not warrant the death penalty. Appellant relies on *Collins v. Lockhart*, 754 F.2d 258 (8th Cir.1985), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

In *Collins*, the defendant was convicted and sentenced to death in Arkansas for capital felony murder, defined in Arkansas as murder during the course of a robbery. *Collins*, 754 F.2d at 262. The jury found beyond a reasonable doubt three aggravating circumstances, one in which it stated that Collins committed the murder for pecuniary gain. *Id.* at 263. The court found error because the aggravating circumstance of pecuniary gain duplicated an element of the crime, therefore the defendant was automatically put into a death eligible class without any finding that narrows the class of persons eligible for the death penalty. *Id.* at 263–64. *But see Lowenfield v. Phelps*, ⸺ U.S. ⸺, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (submitting an element of the murder as an aggravating circumstance is not unconstitutional). Appellant here was convicted of murder in the first degree defined as "knowingly causes the death of another person after deliberation upon the matter." § 565.020, RSMo Supp. 1984. No element of the crime of murder is part of the challenged statutory aggravating circumstances. *See also State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987). The trial court did not err.

 Appellant next asserts that there was insufficient evidence to support submission of the aggravating circumstance that the murder was committed by a person "who has escaped from the lawful custody of a place of lawful confinement." Section 565.032.2(9), RSMo Supp.1984. A halfway house is just as much a place of confinement as a prison. The appellant had not been discharged from custody. The trial court did not err.

 Appellant challenges submission of the aggravating circumstance of torture or depravity of mind § 565.032.2(7), RSMo Supp.1984 as unconstitutional. We have previously upheld the constitutionality of this aggravating circumstance and its application. *See e.g., State v. Newlon*, 627 S.W.2d 606, 621 (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149

(1982) (depravity of mind not unconstitutionally vague); *State v. Blair*, 638 S.W.2d 739, 758 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983); *State v. Smith*, 649 S.W.2d 417, 433–34 (Mo. banc 1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *State v. Battle*, 661 S.W.2d 487, 492 (Mo. banc 1983), *cert. denied*, 464 U.S. 1306, 104 S.Ct. 567, 78 L.Ed.2d 538 (1984). We cannot say beating a man and locking him in a freezer to slowly suffer death by either suffocation or hypothermia is not torture or depravity of mind. The trial court did not err.

## IX

Appellant alleges that the trial court erred in sentencing appellant to death because § 565.020, RSMo Supp.1984, violates the eighth amendment of the U.S. Constitution because it allows unbridled prosecutorial discretion in selecting death penalty cases. Appellant alleges that he, being the less culpable codefendant, should not have been tried first. We have repeatedly rejected arguments challenging prosecutorial discretion. *State v. Amrine*, 741 S.W.2d 665 (Mo. banc 1987); *State v. Trimble*, 638 S.W.2d 726, 737 (Mo. banc 1982), *cert. denied*, 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). There was no error.

## X

We now turn to our statutory mandated review of the imposition of the death sentence. § 565.035.3, RSMo Supp.1984.

We are required to decide whether the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. After independent review, we conclude that there is no evidence that the death sentence was imposed under the influence of passion, prejudice or other arbitrary factor.

The statute requires that we determine whether the evidence supports the jury's finding of aggravating circumstances. We have previously discussed each of the statutory aggravating circumstances. No serious questions have been raised regarding the sufficiency of the evidence of the statutory aggravating circumstances. The prior convictions were not disputed. There is sufficient evidence to support all of the findings of aggravating circumstances.

We review the sentence to determine if it is disproportionate to the penalty imposed in similar cases, considering the crime, strength of the evidence and the defendant. Sentences have been affirmed in cases involving robbery of elderly and helpless victims. *State v. Battle, supra; State v. Gilmore*, 681 S.W.2d 934 (Mo. banc 1984); *State v. Laws*, 661 S.W.2d 526 (Mo. banc 1983) and *State v. Gilmore*, 661 S.W.2d 519 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1983). Death sentences of accomplices have been affirmed. *State v. Roberts*, 709 S.W.2d 857 (Mo. banc 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *Gilmore, supra*. Death sentences have been affirmed even though the defendant lacked a history of assaultive convictions. *State v. Battle, supra; State v. Johns, supra*. Death sentences have also been affirmed in which the defendant was less than appellant's age. *State v. Pollard*, 735 S.W.2d 345, (Mo. banc 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 733, 98 L.Ed.2d 682 (1988) (age 19); *State v. Wilkins*, 736 S.W.2d 409 (Mo. banc 1987) (age 16); *State v. Lashley*, 667 S.W.2d 712 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984) (age 17): *State v. Blair, supra*, (age 18); *State v. Battle, supra*, (age 18).

■ The appellant submitted as mitigating circumstances his age of 20 years at the time of the commission of the crime, his lack of history of assaultive criminal behavior and his alleged minor participation in the crime. The jury could properly find that the alleged mitigating circumstances did not outweigh the aggravating circumstances.

■ The penalty is not excessive or disproportionate in comparison with other cases.

Appellant's conviction and sentence are affirmed.

BILLINGS, C.J., and DONNELLY, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

BLACKMAR, Judge, concurring.

My original impression was that the prosecutor was seriously out of bounds in intimating in his rebuttal argument that the other participants in the crime had given statements which contained information adverse to the defendant. Examination of the transcript persuades me that the claim of retaliation is not wholly without foundation and so, although I do not believe that I would have ruled as the trial judge did, I do not believe that reversal is indicated. I am still concerned about trial judges' apparent unwillingness to keep prosecutors' closing arguments in bounds. *See State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987) (Blackmar, J., dissenting).

I also believe that the principal opinion unnecessarily holds that a "halfway house" is a place of confinement within the meaning of § 565.032(9), RSMo 1986. The legislature must have thought that the escape of a confined person presented substantial dangers both during the escape and while the escapee is at large. Absent evidentiary description of the nature of confinement in a halfway house and of the restrictions imposed, I am not sure that the same dangers are manifest. The record adequately shows other statutory aggravating circumstances and so the finding of this circumstance is not necessary to the judgment.

In all other respects I concur in the opinion and judgment of affirmance.