United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2563EM

_____

Bruce Kilgore,                         *
                                        *

          Appellant,           *
                                        *   On Appeal from the United

     v.                          *   States District Court
                                        *   for the Eastern District
                                        *   of Missouri.

Michael Bowersox and         *
Jeremiah W. Nixon,           *
                                        *

          Appellees.           *

_____

Submitted:  June 9, 1997

Filed:  September 8, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and
     WOLLMAN, Circuit Judge.

_____

RICHARD S. ARNOLD, Chief Judge.


       Bruce Kilgore was convicted of first-degree murder and sentenced to death.
After the Missouri state courts affirmed his conviction and denied him post-conviction

relief, Kilgore filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the District Court.[1]  The District Court denied the petition, and we affirm.

## I.

Bruce Kilgore was convicted of first-degree murder for the death of Marilyn Wilkins.  The facts surrounding her kidnapping and murder are laid out in detail in the District Court's opinion, and we repeat only a few here, for the sake of clarity.

Bruce Kilgore and Willie Luckett together kidnapped Marilyn Wilkins as she left her job working at a restaurant where Luckett formerly worked.  Luckett's belief that Wilkins was responsible for his firing led to the plan to kidnap her.  Because she recognized Luckett, Luckett told her she would have to be killed.  She was then stabbed several times, and died after her throat was cut.  Renee Dickerson, Luckett's girlfriend, knew of the kidnapping plan, and saw the two men after the murder.  Lessie Vance, a cousin of Luckett's, accompanied the two men on the day following the murder on trips to pawn shops, where they sold Wilkins's jewelry.  Kilgore was eventually arrested, and made statements to the police about the murder and where evidence could be found.  After a jury trial, Kilgore was convicted of first-degree murder, and sentenced by the jury to death and to two consecutive life sentences for first-degree robbery and kidnapping.

The Missouri Supreme Court affirmed Kilgore's conviction on direct appeal, and approved his sentence after a proportionality review.  State v. Kilgore, 771 S.W.2d 57 (Mo.) (en banc), cert. denied, 493 U.S. 874 (1989).

---

[1]The Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

Kilgore filed for post-conviction relief under Missouri Supreme Court Rule 29.15, but was denied relief because his motion was untimely and unverified. After a hearing, the Missouri Supreme Court affirmed the denial of post-conviction relief. Kilgore v. State, 791 S.W.2d 393 (Mo. 1990) (en banc).

Kilgore then sought a writ of habeas corpus under Missouri Supreme Court Rule 91. The Supreme Court denied Kilgore's petition, because all the grounds for relief stated therein had been rejected either on direct appeal or as part of the Rule 29.15 proceeding, or were procedurally barred because Kilgore had provided no sufficient reason to excuse his failure to present them in those earlier proceedings.

No other state-court remedy then remained. Kilgore filed a petition for a writ of habeas corpus in the District Court under 28 U.S.C. § 2254, which was denied. Kilgore now appeals.

II.

Kilgore offers several arguments for reversal, and we address them seriatim. The State points out throughout its brief that Kilgore should be procedurally barred from raising many of his claims. Because we reject the claims on their merits, we do not discuss the procedural-bar issues. See Lashley v. Armontrout, 957 F.2d 1495, 1499 (8th Cir. 1992), vacated on other grounds, 993 F.2d 642 (8th Cir. 1993), rev'd on other grounds, 507 U.S. 272 (1993).

**A. Alleged Prosecutorial Misconduct**

Kilgore argues that prosecutorial misconduct prejudiced his case. The misconduct he alleges centered primarily around one of the state's witnesses, Renee Dickerson. Kilgore believes the prosecution withheld vital information about Dickerson and about another witness, Lessie Vance.

## 1. Notification of Dickerson's Testimony

Kilgore's counsel asked to depose Dickerson months before trial. The prosecution responded that she would not be called as a witness, and that she in fact had been charged with hindering prosecution. Kilgore's attorney accordingly did not depose Dickerson. Later, once the trial was under way, the prosecution endorsed Dickerson as a witness, just before she was to testify in the penalty phase. Kilgore argues that the prosecution suppressed valuable evidence and impermissibly surprised Kilgore with Dickerson's testimony, in violation of Missouri court rules and the Constitution.

The District Court found that the prosecution's conduct was explained by Dickerson's decision, after trial had begun, that she was willing to testify. Defense counsel did not have time to depose Dickerson, but did interview her before she testified, and, according to the Missouri Supreme Court, learned of the content of Dickerson's upcoming testimony. See State v. Kilgore, 771 S.W.2d at 65. Before trial, Dickerson had not been expected to testify. The prosecution assumed, reasonably, that she would invoke the privilege against self-incrimination if called as a witness. After the trial began, Dickerson pleaded guilty to a criminal charge in connection with the murder, thus eliminating this obstacle to her testimony.

Dickerson's testimony was the only evidence suggesting that Kilgore, rather than Luckett, actually wielded the knife. Dickerson testified that Kilgore admitted to her that he killed Wilkins. This was doubtless damaging testimony, and may very well have been a major factor in the jury's decision to sentence Kilgore to death. The question, however, is not whether the evidence was damaging to the defense, but whether the defendant was deprived of a fair trial. The defense's lack of deposition testimony meant that it had less information with which to impeach Dickerson. Prior to trial, Dickerson had spoken with authorities about the killing on three separate occasions, without ever once mentioning that she heard Kilgore confess. One can

-4-

presume she would have made the same omission, under oath, in a deposition, and the defense would have had one more prior inconsistent statement of Dickerson's to bring out at trial.

The standard for evaluating the failure to provide information to the defense is whether a reasonable probability exists that, had the information been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985). The District Court held that, because defense counsel had ample other information and prior inconsistent statements with which to impeach Dickerson, and with which he did impeach Dickerson, there was no reasonable probability the outcome would have been different, and the Bagley standard was not met. The defense brought out that Dickerson had, on three occasions, failed to mention Kilgore's admission when speaking with authorities; that she claimed to have heard Kilgore's admission right after being awakened; and that she was Luckett's girlfriend and might be biased on that account. We see no reason to disagree with the District Court's decision that deposition testimony of Dickerson would not have provided the defense with significantly more impeachment material than it had anyway, and that the additional information would not have changed the outcome of the trial.

## 2.  Plea Bargain

Kilgore also argues that the prosecution failed to disclose that Dickerson's testimony was part of a plea bargain between her and the prosecution. The District Court found that Kilgore presented no evidence that such an agreement existed. The Missouri Supreme Court refers to "the plea-bargain disposition of Dickerson's own criminal case," 771 S.W.2d at 67, but the record nowhere shows what the bargain was. It is therefore impossible to say what the effect of cross-examination on the subject of the plea bargain would  have been, so this argument cannot succeed.

### 3.  Change of Theory at Penalty Phase

The prosecution's theory during the guilt phase was that Willie Luckett killed Marilyn Wilkins, and that Kilgore was guilty of aiding and abetting Luckett.  After Dickerson testified that Kilgore admitted doing the killing himself, the prosecution changed its theory, and during the penalty phase argued that Kilgore was the killer. Kilgore argues that this change in theories violated his constitutional rights.  The District Court rejected his argument.  The Court attributed the surprising nature of the change to the unusual "confluence of events" during Kilgore's trial, rather than to prosecutorial misconduct.  We see no error in the District Court's analysis.  The prosecution, upon learning for the first time (from Dickerson) that Kilgore had been the killer (or had admitted the killing) could hardly be expected not to use the information. At this point, Kilgore had already been convicted of capital murder.  The change in theory might, in fact, have helped Kilgore, by giving the jury some reason to suspect the soundness of the prosecution's evidence.

### 4.  Tape Recordings of Lessie Vance

Kilgore asserts that the prosecution committed another Bagley violation in failing to disclose certain tape-recorded statements of Lessie Vance, which the defense would have been able to use in impeaching Vance's credibility.  Vance testified at trial that he, Kilgore, and Luckett pawned Wilkins's jewelry the day after she was killed.  The tape-recordings apparently were of an early conversation between Vance and the police, in which Vance provided an alternative explanation of why he had Wilkins's jewelry.

The District Court held that there was no Bagley prejudice in the non-disclosure of the tapes, because Vance testified repeatedly at trial that he had lied during that first meeting with the police.  The defense knew about the statements themselves, and would have been in no better position to impeach Vance if it had had the tapes.  We concur in the District Court's conclusion.

## B. Jury Instruction

Kilgore also challenges one of the jury instructions given in his case as failing to require the jury to find that he had deliberated in order to convict him of first-degree murder. It is unclear whether Kilgore intends us to read this argument as if the instruction itself worked a constitutional violation, or as an example of ineffective assistance of counsel. It was argued to the District Court as an ineffective-assistance-of-appellate-counsel claim, and we too will treat it as such.

This claim was presented to the District Court for the first time in a Rule 59(e) motion. Because Kilgore showed no good reason to excuse his failure to raise the claim in his original habeas petition, the District Court correctly dismissed the claim as untimely. It went on, however, to reject the argument on its merits as well.

There are several problems with Kilgore's assertion that his appellate counsel was ineffective for failing to argue this purported instructional error. First, the cases upon which Kilgore principally relies to reveal the error, and which he argues show the ineffectiveness of his appellate lawyer, were decided after Kilgore's direct appeal had already been affirmed by the Missouri Supreme Court. See State v. Ervin, 835 S.W.2d 905 (Mo. 1992) (en banc), cert. denied, 507 U.S. 954 (1993); State v. O'Brien, 857 S.W.2d 212 (Mo. 1993) (en banc); State v. Ferguson, 887 S.W.2d 585 (Mo. 1994) (en banc). Second, while the Missouri state courts have refined their jury instructions so that they define more carefully Missouri's definition of its own "deliberation" requirement, there is no due-process violation in the instruction as it was given to Kilgore's jury. The instruction required the jury to find that Kilgore acted with cool reflection, which is the precise definition of deliberation under state law. We affirm the District Court on this point as well.

## C. Aggravating-Circumstance Instruction

The jury found four statutory aggravating circumstances, plus two others based on prior convictions, when it sentenced Kilgore. Kilgore now argues that the four statutory aggravating-circumstance instructions were constitutionally flawed. We do not agree.

Kilgore argues that two of the aggravating circumstances, as submitted to the jury, are unconstitutionally vague and overbroad. One of the aggravating circumstances the jury found was that the killing "involved torture or depravity of mind and as a result thereof was outrageously or wantonly vile, horrible, or inhuman." Kilgore v. State, 771 S.W.2d at 68. We have rejected the argument that this instruction is vague. In Smith v. Armontrout, 888 F.2d 530, 538 (8th Cir. 1989), we held that a finding of torture could show a properly limited construction of the "vile, horrible, or inhuman" description, such that jurors could reasonably designate some murders as worse than others for purposes of imposing the death penalty. (The Missouri Supreme Court had adopted this limiting construction before the trial in this case.) The instruction was supported by substantial evidence, since there is evidence that Wilkins was kidnapped, driven around face-down in a car, told she was going to be killed, and had wounds consistent with attempting to fight off her attacker. These facts support a finding of both physical and psychological torture, and the instruction as applied in this case was neither vague nor overbroad.

The second aggravating circumstance Kilgore challenges for overbreadth is that the killing was committed "for the purpose of avoiding, interfering with, or preventing a lawful arrest." Kilgore v. State, 771 S.W.2d at 68. The District Court held that this aggravating circumstance provided the jury with a means rationally to distinguish murderers who should receive the death penalty from those who should not. Accord,

Mathenia v. Delo, 975 F.2d 444, 449-50 (8th Cir. 1992), cert. denied, 507 U.S. 995 (1993).  We agree.

Kilgore also argues that two of the aggravating circumstances submitted to the jury were duplicative.  The jury found both that Kilgore committed the killing for the purpose of receiving money or some other thing of monetary value, and that Kilgore committed the crime during the perpetration of a robbery and kidnapping.  As the Missouri Supreme Court has noted, the two circumstances are related, but distinct, because they concern different facets of criminal activity.  State v. Jones, 749 S.W.2d 356, 365 (Mo.) (en banc), cert. denied, 488 U.S. 871 (1988).  Even if that distinction were insufficient, and only one of the aggravating circumstances were allowed to stand, the error would still be harmless.  Four aggravating circumstances would remain.  By the same logic, even if  Kilgore were to prevail in all his arguments, he would only eliminate three, or possibly four, of the six aggravating circumstances cited by the jury. In Missouri, only one aggravating circumstance is required to support a death sentence. Schlup v. State, 758 S.W.2d 715, 716 (Mo. 1988) (en banc).  Missouri is a "non-weighing" state.   The District Court correctly rejected Kilgore's aggravating-circumstance claims.

### D.  Mitigating-Circumstance Instruction

Kilgore argues that the mitigating-circumstance instruction given his jury was phrased so as to limit impermissibly the jury's discretion to find that there were mitigating circumstances which outweighed the aggravating circumstances of the crime. The instruction, he argues, violates Mills v. Maryland, 486 U.S. 367 (1988), and McKoy v. North Carolina, 494 U.S. 433 (1990).  Kilgore's argument is foreclosed by our decision in Reese v. Delo, 94 F.3d 1177, 1186 (8th Cir. 1996), cert. denied, 117 S. Ct. 2421 (1997).  In that case, the petitioner made a virtually identical argument to the one Kilgore now advances, about the same wording in Missouri's mitigating-circumstance instruction.  We reject Kilgore's argument for the same reasons.

## E. Voir Dire

Kilgore alleges that the voir dire procedures employed in the selection of his jury were unconstitutional. Kilgore, who is African-American, was convicted by an all-white jury, and asserts that potential African-American jurors were struck from the venire in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). The prosecution used five of its nine peremptory strikes on African-Americans. The Missouri Supreme Court, and the District Court in turn, held that the prosecution struck those African-American veniremembers for race-neutral reasons. We agree.

Four of the five African-American prospective jurors who were struck had had significant contact with the criminal-justice system. Kilgore argues that there were white jurors who had had similar contact, but were not struck. The two groups are not identical, however; the four African-American potential jurors also gave what the prosecution considered "weak" or equivocal answers when asked about their willingness to impose the death penalty. The white potential jurors who had had contact with the criminal justice system were not similarly "death-scrupled." The fifth African-American juror who was struck said she had seen the victim's son on television and in public. The son was scheduled to testify for the state. The prosecution struck her out of concern that her prior experience of one of the state's witnesses might unfavorably affect her perception of that witness's testimony.

The District Court held that since the prosecution offered acceptable race-neutral reasons for exercising its peremptory strikes of the five African-American potential jurors, there is no <u>Batson</u> violation. Again, we agree with that Court.

## F. Trial Court Errors

Kilgore claims the trial court committed several errors which violated his constitutional rights.

## 1. Coerced Confession

Kilgore asserts that the trial court erred in admitting into evidence several statements he made to the police. He alleges he was beaten and threatened by police officers, and that the statements he made were therefore physically and mentally coerced. The District Court was unconvinced by this allegation, however, because Kilgore never produced statements from any of the witnesses he claims can corroborate his assertions, including his mother and aunt, both of whom testified for him during the penalty phase of his trial without mentioning beatings or the noticeable injuries Kilgore asserts he received during the beatings. Additionally, four police officers testified that Kilgore was not beaten or threatened, but was in fact notified of his Miranda rights at the time of his arrest and at several times afterward. We see no error in the District Court's conclusion.

## 2. Lack of Jurisdiction

Kilgore argues that the information in lieu of indictment did not allege facts sufficient to base jurisdiction in the City of St. Louis. The information alleged that the killing took place in St. Louis County, outside the jurisdiction of the City. Before the District Court, Kilgore alleged that no element of the crime charged took place within the City's jurisdiction. Kilgore was charged with multiple crimes, however: first-degree murder, first-degree robbery, and kidnapping. The information asserted the City had jurisdiction because Wilkins was abducted in the City. Federal-court review of the sufficiency of an information is limited to whether it was constitutionally deficient; whether it comported with requirements of state law is a question for state courts. Johnson v. Trickey, 882 F.2d 316, 320 (8th Cir. 1989). The inquiry for our Court, therefore, is not whether the information communicated the basis of jurisdiction in compliance with state law, but rather whether it gave Kilgore adequate notice of the potential charges against him so that he could prepare to contest those charges. Blair

-11-

v. Armontrout, 916 F.2d 1310, 1329 (8th Cir. 1990), cert. denied, 502 U.S. 825 (1991). The District Court held that since the information provided Kilgore with sufficient notice, it met the requirements of due process. We agree with that determination.

### 3. Trial Judge's Report

The trial judge, in accordance with Mo. Rev. Stat. § 565.035, submitted a report about Kilgore's trial to the Missouri Supreme Court for consideration in its proportionality review of Kilgore's sentence. Kilgore argues that the statute requiring submission of the report is unconstitutional because it denies convicted defendants their right to confrontation. This claim has no merit. The trial judge was not a witness against Kilgore. In addition, subsection 4 of that statute gives defendants, and the state, the right to submit briefs and to present oral argument about the proportionality of the sentence to the Supreme Court. Mo. Rev. Stat. § 565.035.4. It is clear from that court's opinion that it considered several arguments advanced by Kilgore in arriving at its decision that the death sentence was proportionate in his case. Kilgore v. State, 771 S.W.2d at 68-70. Kilgore's right to confrontation was not violated.

### 4. Victim's Good Character

The District Court dismissed this claim because petitioner did not specify what evidence of the victim's good character was introduced. Kilgore includes no more information in his brief to this Court. We likewise reject the claim.

### G. 29.15 Proceedings

Kilgore alleges that the Missouri state courts deprived him of his constitutional rights in arbitrarily applying a procedural-bar rule in Kilgore's 29.15 proceedings. He argues first that the 30-day filing deadline contained in Rule 29.15 is unconstitutional because it is too short. This cannot be the case; states are not required by the

Constitution to provide post-conviction procedures like that of Rule 29.15, and the time limit is not, at least in the abstract (which is all petitioner argues), unreasonably short.

Kilgore also alleges that the state courts deprived him of his constitutional right to equal protection by refusing to consider his 29.15 motion. The trial judge dismissed Kilgore's 29.15 motion because it was untimely and unverified. Kilgore v. State, 791 S.W.2d at 393-94. Kilgore appealed the dismissal, and the Missouri Supreme Court affirmed. Id. He now argues that other movants under the Rule have been treated more favorably, and that the strict application of the Rule's requirements to him denied him equal protection. He cites three cases to support that contention, but none of those cases concerns a movant similarly situated to Kilgore. See State v. Ervin, 835 S.W.2d at 927-28; State v. Hamilton, 791 S.W.2d 789, 797-98 (Mo. 1990), cert. denied, 513 U.S. 1085 (1995); Reuscher v. State, 887 S.W.2d 588, 590-91 (Mo. 1994) (en banc), cert. denied, 514 U.S. 1119 (1995). We see no evidence that Kilgore received unequal or arbitrary treatment in his 29.15 proceedings.

## H. Ineffective Assistance of Counsel

Kilgore alleges that his counsel rendered constitutionally ineffective assistance in several respects. On none of those occasions did Kilgore's counsel fall below the standard enunciated in Strickland v. Washington, 466 U.S. 668, 694 (1984). We reject this claim as well.

### 1. Hearsay

Kilgore charges that his counsel was ineffective for failing to object when Renee Dickerson testified that Willie Luckett was remorseful about the killing. Kilgore argues that Dickerson's statements were inadmissible hearsay. His counsel did, however, make a hearsay objection when Dickerson was asked whether Luckett had said anything to express remorse, and the trial court sustained defense counsel's objection.

The prosecution then rephrased the question to ask what Dickerson herself observed. Not only did defense counsel object to questions calling for hearsay, those objections were sustained. We see no error indicating deficient performance by Kilgore's counsel in this regard.

## 2. Failure to Request Continuance

The second error Kilgore argues his counsel made was failing to request a continuance when Renee Dickerson was endorsed as a witness. Kilgore's trial counsel objected to Dickerson's testimony on the basis of surprise and subjected her to thorough cross-examination. Again, we see no indication that the outcome of the trial would have been different had counsel made such a request. Kilgore does not indicate what favorable evidence could have been developed if a continuance had been granted.

## 3. Coerced Statements

Kilgore argues that his counsel failed to investigate adequately the "coerced statement," and presumably the coercion itself. The District Court found that counsel did file a motion to suppress the statement, which was denied by the trial judge. Kilgore has not come forward with any evidence of what his lawyer would have discovered in a more extensive investigation. As is noted above, Kilgore has offered no statements by witnesses (other than himself) to the alleged police coercion or to Kilgore's resulting injuries. Two of those witnesses are his mother and aunt, who testified during the penalty phase of the trial, but did not mention any coercion or resulting physical injury. We again have no evidence of how the outcome of the proceedings might have been different had counsel made different choices. Accordingly, we agree with the District Court's conclusion that there was no Strickland prejudice.

## 4.  Individual Voir Dire

Kilgore argues his counsel should have requested individual voir dire.  The District Court rejected this claim because there is no indication in the record that group questioning of potential jurors was insufficient, or that the composition of the jury would have been different had jurors been questioned individually.  Again, there is no showing of Strickland prejudice, and we affirm.

## 5.  Lesser-Included-Offense Instruction

The trial court instructed Kilgore's jury on two offenses:  first-degree (capital) murder and second-degree murder.  Kilgore argues that the failure to instruct the jury on the additional offense of second-degree felony murder violated his constitutional rights under Beck v. Alabama, 447 U.S. 625 (1980).  As an initial matter, it is difficult to discern from Kilgore's brief whether the claim he asserts is a free-standing Beck claim, or a claim that his lawyer's failure to attempt to cure the alleged Beck violation at trial constitutes ineffective assistance of counsel.  Kilgore includes this claim in the section of his brief concerning ineffective assistance, but does not address his lawyer's performance as such.  Instead, he argues that the failure to instruct the jury on second-degree felony murder violated his rights to due process, equal protection, and freedom from cruel and unusual punishment.  Since the issue was presented to the District Court as an ineffective-assistance claim, and the District Court decided it as such, we too will treat it as an ineffective-assistance claim.

Kilgore argues that his trial counsel should have requested a second-degree felony-murder instruction.  The District Court held that Kilgore could not show prejudice sufficient to satisfy Strickland.  The District Court reasoned, on the basis of Missouri state courts' treatment of the issue,  that since the jury had the option of convicting Kilgore of first-degree murder, second-degree murder, or nothing, and convicted him of first-degree murder, there was no harm in failing to give the second-

-15-

degree felony murder instruction. The jury had the option of convicting Kilgore of a lesser offense, and did not. They must have found, the reasoning continues, evidence of the deliberation which separates first-degree from second-degree murder. Therefore, the jury never would have convicted him of any lesser offense, and the absence of the instruction was harmless. See State v. Petary, 781 S.W.2d 534, 544 (Mo. 1989) (en banc), vacated on other grounds, 494 U.S. 1075, affirmed on remand, 790 S.W.2d 243, cert. denied, 498 U.S. 973 (1990).

This analysis might not hold true if the lesser-included-offense instruction did not make sense; a crime which carried a drastically lesser sentence would leave the jury with something dangerously close to the all-or-nothing choice prohibited by Beck. In this case, however, the jury was given a reasonable second option, and one which was supported by the facts. Kilgore argues that when a defendant is tried for an offense which carries the death penalty, the trial court must submit to the jury all lesser included offenses supported by the record. This is not the law. In Schad v. Arizona, 501 U.S. 624, 645-48 (1991), the Supreme Court held that Beck did not require a trial court to instruct on all possible lesser-included offenses. See also Reeves v. Hopkins, 102 F.3d 977 (8th Cir. 1996); Six v. Delo, 94 F.3d 469, 478 (8th Cir. 1996), cert. denied, 117 S. Ct. 2418 (1997). In Schad, the trial court instructed the jury on capital murder and on second-degree murder. Schad argued that Beck required that a robbery instruction also be given. The Supreme Court rejected the argument, holding that "[t]his central concern of Beck simply is not implicated . . . for petitioner's jury was not presented with an all-or-nothing choice." Id. at 647. We are satisfied, in this case, that the jury had a real choice, and that Kilgore cannot show Strickland prejudice. We agree with the District Court's analysis.

### 6. Other Arguments

Kilgore's brief lists several other reasons he believes his counsel rendered constitutionally deficient performance. Appellant's Br. 35. He has presented

-16-

arguments, beyond the mere listing of the alleged error, to this Court about only a few, which are addressed above. The District Court addressed and rejected each of his other arguments, and Kilgore has offered us no reason why the District Court erred in its decision. In each instance, the District Court held that at least one of the components of the Strickland standard was not met. We see nothing in the record before us to cast doubt upon the District Court's conclusions, and for the sake of brevity will not repeat that conclusion over and over again here.

## I. Proportionality Review

Kilgore asserts that the Missouri Supreme Court's review of the proportionality of his sentence violated his right to due process. The Missouri legislature mandates such a review of all cases where the death sentence is imposed in Missouri courts. Mo. Rev. Stat. § 565.035. While the review is not mandated by the federal Constitution, once in place it must be conducted consistently with the Due Process Clause. Kilgore argues that the Missouri Supreme Court conducts arbitrary review of prior cases and sentences, intent on "automatically affirm[ing] death sentences" rather than on meaningful comparison, and thereby fails to meet the requirements of the Missouri statute. Appellant's Br. 48. He also argues that the state courts do not maintain an adequate database of cases since May 1977 where death sentences or life sentences without parole were imposed, and that the inadequacy of the database further undermines meaningful proportionality review.

We have considered and rejected this argument before. The State Supreme Court in this case did conduct a comparison of Kilgore's case with similar cases, and concluded that, against the backdrop of other Missouri cases, the death penalty was not disproportionate to the crime of which Kilgore was convicted. State v. Kilgore, 771 S.W.2d at 69-70; id. at 70 (Blackmar, J., concurring). We will not, in such a case, look behind the Missouri Supreme Court's conclusion or consider whether that court misinterpreted the Missouri statute requiring proportionality review. Bannister v. Delo,

100 F.3d 610, 627 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 2526 (1997).  We see no constitutional error.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.